IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CR-329-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| BRIAN KEITH BERRY, ) | |
| ) | |
| Defendant. ) | |

This matter came before the court on December 10, 2014, for sentencing, at which hearing the court addressed and overruled several objections raised by defendant to the advisory guidelines calculation recommended by the United States Probation office. Where the court indicated a written opinion would follow more fully memorializing the court's reasoning with respect to one such objection raised by defendant, concerning calculation of his offense level, this opinion is rendered.

BACKGROUND

In particular, defendant objected to calculation of base offense level 16, under USSG. § 2A3.5(a)(1), premised upon defendant's status as a Tier III sex offender. Defendant argued, instead, that his base offense level should have been 14, because he is classified by the state of New Jersey as a Tier II sex offender based upon his prior conviction of "Endangering the Welfare of a Child." The court at sentencing determined, by contrast, that defendant was a class Tier III sex offender based upon description of the conduct underlying defendant's prior sex offense as set forth in the presentence report.

Defendant pleaded guilty in this case to failure to register as a sex offender under 18 U.S.C. § 2250. Section 2250 provides that "Whoever is required to register under the Sex Offender Registration and Notification Act . . . and knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act; shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2250(a).

ANALYSIS

The Sex Offender Registration and Notification Act (SORNA), "establishes a comprehensive national system for the registration of [sex] offenders." 42 U.S.C. § 16901. It requires a sex offender, defined as "an individual who was convicted of a sex offense," id. § 16911(1), to register in each jurisdiction where he resides and in each jurisdiction where he is employed, id. § 16913 (a). See United States v. Bridges, 741 F.3d 464, 467 (4th Cir. 2014).

Under U.S.S.G. § 2A3.5, the base offense level for failure to register as a sex offender is 16 "if the defendant was required to register as a Tier III offender," and 14 "if the defendant was required to register as a Tier II offender." USSG. § 2A3.5(a). The guidelines further provide that the terms "Tier III offender" and "Tier II offender" have the meaning given the terms "tier III sex offender" and "tier II sex offender," respectively, in SORNA, 42 U.S.C. § 16911. USSG § 2A3.5, comment. (n.1). Under SORNA, a "tier III sex offender" means, in pertinent part,

> a sex offender whose offense is punishable by imprisonment for more than 1 year and--
> (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
> (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
> **(ii) abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years;** . . . .

42 U.S.C. § 16911(4) (emphasis added). By comparison, a "tier II sex offender" means, in pertinent part,

> a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and--
> (A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:
> (i) sex trafficking (as described in section 1591 of Title 18);
> (ii) coercion and enticement (as described in section 2422(b) of Title 18);
> (iii) transportation with intent to engage in criminal sexual activity (as described in section 2423(a)) of Title 18;
> (iv) abusive sexual contact (as described in section 2244 of Title 18).

42 U.S.C. § 16911(4).

"[F]ederal law, rather than state law, controls the question of what constitutes a conviction under SORNA." Bridges, 741 F.3d at 468. Congress granted authority to the Attorney General to "issue guidelines and regulations to interpret and implement [SORNA]." 42 U.S.C. § 16912(b). "The Attorney General, consistent with this grant of authority and following notice-and-comment procedures, has promulgated comprehensive guidelines that illuminate the meaning of the term. See The National Guidelines for Sex Offender Registration and Notification, 73 Fed.Reg. 38,030 (July 2, 2008) (SMART Guidelines)." Bridges, 741 F.3d at 468. "These Guidelines can and do have the force and effect of law." Id.

The Fourth Circuit has not addressed the question raised by this case, whether the court should look to underlying conduct in determining a defendant's Tier classification, or whether the court must defer to a classification determination previously made by a state based upon defendant's prior sex offense. Cf. Bridges, 741 F.3d at 468 (examining the definition of "conviction" under SORNA, where defendant plead nolo contendere in Florida).

3

In light of the approach by the Fourth Circuit in <u>Bridges</u>, and reference to the SMART Guidelines, the court concludes that it should look to underlying conduct in determining a defendant's Tier classification, for purposes of USSG § 2A3.5 offense level calculation.

With respect to sources of information for determining Tier classification, the SMART Guidelines provide:

> Offense of conviction versus underlying conduct: Some commenters raised questions or provided recommendations as to whether the application of SORNA's requirements depends on the elements of the offense for which the sex offender is convicted or the underlying offense conduct. The answer to this question may affect whether registration is required by SORNA at all, and may affect the "tier" classification of offenders under the SORNA standards. The general answer is that **jurisdictions are not required by SORNA to look beyond the elements of the offense of conviction in determining registration requirements**, except with respect to victim age. The discussion of the tier classifications has been edited in the final guidelines to make this point more clearly.
>
> \*          \*          \*
>
> In assessing whether the offense satisfies the criteria for tier II or tier III classification, **jurisdictions generally may premise the determination on the elements of the offense, and are not required to look to underlying conduct that is not reflected in the offense of conviction.**

73 FR 38030 at 38031 & 38053 (emphasis added).

These SMART guidelines support the court's approach here in two respects. First, they make clear that jurisdictions, such as the state of New Jersey in this instance, would not need to look beyond the elements of the offense of conviction in determining registration requirements. Indeed based upon its own guidelines, New Jersey in this instance may have looked only to the elements of the offense of conviction of the state offense of "Endangering the Welfare of a Child" without considering the underlying offense conduct in classifying defendant as a tier II sex offender in New Jersey. At the same time, the SMART guidelines suggest that, while not required, it is not

4

impermissible to consider the underlying offense conduct in determining tier classification for purposes of SORNA.

In sum, contrary to defendant's objection, neither the SORNA statute nor the SMART Guidelines require the court to adopt a classification employed by an individual state. Where defendant has resided and or been employed in New Jersey, North Carolina, and Connecticut, deferring to an individual state's classification could result in inconsistent classification requirements for purposes of applicability of § 2A3.5. Because the statute requires a sex offender to register in each jurisdiction where he resides and in each jurisdiction where he is employed, id. § 16913 (a), the court's independent determination of classification requirements, under federal law, satisfies the purposes of SORNA. See 42 U.S.C. § 16901; Bridges, 741 F.3d at 467.

In this case, according to the presentence report, defendant was convicted of "Endangering the Welfare of a Child," a felony under New Jersey law, and sentenced to 4 years and 6 months custody, on October 3, 2003. Because this conviction was punished by imprisonment for more than 1 year, the issue remaining here is whether this prior sex offense it is comparable to or more severe than the offenses enumerated under the "tier II sex offender" or "tier III sex offender" category under 42 U.S.C. § 16911.

Based on the underlying prior offense conduct as set forth in the presentence report, the predicate offense of conviction in this case is comparable to "abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years." 42 U.S.C. § 16911(4). The conduct described, penetrating the vagina of a 5 year old victim, meets and exceeds the basic elements for violation of 18 U.S.C. 2244, which establishes a violation for "knowingly engag[ing] in or causes sexual contact with or by another person." 18 U.S.C. § 2244(a).

5

CONCLUSION

For the reasons given, defendant "was required to register as a Tier III offender," as that term is defined under SORNA, and the court must calculate defendant's advisory guidelines range upon a base offense level 16. Defendant's objection to the offense level calculation accordingly is overruled.

This the 15th day of December, 2014.

LOUISE W. FLANAGAN
United States District Judge